Peter Strojnik, 6464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| PETER STROJNIK, dealing with his sole and separate claim,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>STATS ChipPAC, Inc., a Delaware corporation; STATS ChipPAC, Ltd., a foreign corporation; TEMASEK HOLDINGS PRIVATE LIMITED, a foreign corporation; SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED, a foreign corporation; CAROLINE LARSEN a natural person; OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., an Arizona Corporation; STATE BAR OF ARIZONA, an Arizona non-profit Corporation; THE UNITED STATES DEPARTMENT OF JUSTICE, a governmental entity; THE COUNTRY OF SINGAPORE, a foreign entity,<br><br>　　　　　　　　　　Defendants. | NO.<br><br>**COMPLAINT**<br>**FOR DECLARATORY JUDGMENT**<br>**28 U.S.C. § 2201** |

-1-

This Action seeks federal declaratory relief arising out of an actual case or controversy relating to Plaintiff's right to exercise his 1st Amendment protected speech free of threats by foreign governments, foreign companies, and their local agents. This Action is brought pursuant to 28 U.S.C. § 2201 and the Arizona version of the Uniform Declaratory Judgment Act, A.R.S. §§12-1831 *et seq.*

**PARTIES, JURISDICTION AND VENUE**

1) Plaintiff PETER STROJNIK is a natural person currently residing in Maricopa County, State of Arizona.

2) Defendants STATS ChipPAC, Inc. is a Delaware corporation, and STATS ChipPAC, Ltd. (collectively "STATS") is a foreign corporation authorized to and conducting business in the County of Maricopa, State of Arizona.

3) Defendant SINGAPORE TECHNOLOGIES SEMICONDUCTORS PRIVATE LIMITED ("STS") is a foreign corporation with its principal place of business in the nation of Singapore. STS is the wholly owned subsidiary of Temasek. STS owns approximately 83% of the outstanding shares of STATS.

4) Defendant TEMASEK HOLDINGS PRIVATE LIMITED ("Temasek") is an investment company headquartered in Singapore that is wholly owned by The Minister for Finance, Inc., a body corporate constituted under Singapore law that is controlled by the Government of Singapore. Temasek is the parent corporation of Defendant Singapore Technologies Semiconductors Private Limited. Temasek is

headed by the wife of the Singaporean Prime Minister Lee Hsien Loong, Madam Ho Ching.

5) Defendant CAROLINE LARSEN ("Larsen") is an attorney licensed to practice in the State of Arizona and the agent for Defendants STATS and, upon information and belief, for STS, Temasek and, by extension, the Government of Singapore.

6) OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. ("Ogletree Deakins") is Larsen's employer. Larsen performed the acts complained of herein within the scope of her employment and as an agent for STATS, STS, Temasek and, by extension, the Government of Singapore.

7) The STATE BAR OF ARIZONA ("State Bar") is an Arizona non-profit corporation consisting of an organization of attorneys with power to sanction attorneys licensed to practice law in the State of Arizona.  State Bar is listed as a party Defendant in order to receive notice of this matter that concerns, or may concern, State Bar, and to comply with A.R.S. §12-1841.

8) US DEPARTMENT OF JUSTICE is listed as a party Defendant in order to receive notice of this matter that concerns, or may concern, the Justice Department and to comply with A.R.S. §12-1841.

9) The COUNTRY OF SINGAPORE is a city-state located just South of Malaysia.

10) On information and belief, Defendants Temasek and/or STS control the operations and day to day functions of STATS.

11) Upon information and belief, the Government of Singapore controls, directly or indirectly, the activities of Temasek, STS and STATS.

12) Jurisdiction of this Court is conferred by virtue of 28 U.S.C. § 1331 (federal question).

13) The facts and allegations contained herein arise out of transactional occurrences that transpired in Maricopa County, State of Arizona.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

14) Plaintiff is a United States citizen; Plaintiff earned his US citizenship through service in the United States Army in 1972.

15) Plaintiff is an attorney licensed to practice in the State of Arizona. Plaintiff represents Diane Sahakian in a case presently pending in the US District Court for the District of Arizona under cause number CV-08-241-PHX-HRH ("the Sahakian case").

16) The issues and allegations in the Sahakian case include, *inter alia*:

a) Serious allegations of sexual, racist and retaliatory misconduct by STATS, a Singaporean company; and

b) Discrimination on the basis of sex in the terms, conditions and privileges of employment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq.; and

c) Allegations of STATS', STS's and Temasek's misuse of the United States Immigration statutes and policies relating to permanent labor certifications for foreign workers; and

d) Allegations of Singaporean employers referring to Americans as "monkeys" and American character as "fat" and "lazy".

e) The existence of a racist and sexist corporate culture of STATS, STS, Temasek and the Country of Singapore.

17) It is Plaintiff's opinion that STATS, STS, Temasek and the Country of Singapore are racist and sexist entities. Plaintiff believes that dissemination of his opinion regarding STATS', STS' Temasek's and Country of Singapore's alleged sexist, racist, retaliatory and illegal immigration policies warrant – indeed require - a dissemination of a press release to alert the American public of the dangers posed by these certain defendants within the bounds of the United States Supreme Court decision in *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991)

18) Defendant Larsen became aware that Plaintiff intended to issue a press release fairly reporting the allegations in the Second Amended Complaint. Defendant Larsen issued the following threat (Exhibit 1):

> We find your scarcely-veiled threat to "ensure the widest possible broadcast of this matter" if Temasek Holdings Private Ltd. and Singapore Technologies Semiconductors Private Ltd.'s refuse to capitulate to your client's exorbitant settlement demand in potential violation of the Arizona Rules of Professional Conduct, Rule 42, ER 3.6. We are prepared to bring any extrajudicial statements regarding this action that might prejudice the adjudication of this matter to the attention of the Court and the State Bar of Arizona if necessary.

19) In issuing the threat, Larsen was acting within the scope of her employment with Ogletree Deakins and in her capacity as the agent for STATS and, upon information and belief, as the local agent for STS, Temasek and, by extension, the Singaporean Government.

20) Plaintiff has reason to believe that the following relationships demonstrate, in part, Singaporean Government's control of Temasek and STATS:

a) The relationship between Singaporean ruling family (Lee Hsien Loong and his father Lee Kuan Yew) and the appointment of Madam Ho Ching as president of Temasek; and

b) The status of Temasek as a "private" company which is in fact owned by the Singaporean Government; and

c) Temasek's control over operations of STATS, including control over STATS publicly trading status, the pending delistment from the Singapore exchange, and the control over the purchase of STAT's shares by STS. STS's offer, through its counsel, to purchase STATS addressed to, inter alia, the Securities and Exchange Commission is attached hereto as Exhibit 2.

21) It is Plaintiff's opinion that Singapore is an oligarchic dictatorship pretending to be a democracy.

22) It is Plaintiff's opinion that the Government of Singapore, its ruling family and Temasek have a motive to cower Plaintiff into silence for the following reasons that Plaintiff believes to be true:

a) Singapore relies on the success of its trade and manufacturing to sustain its existence; and

b) In order for Singaporean Government to sustain its existence – and the power of the ruling family Lee Hsien Loong and his father Lee Kuan Yew behind the scenes - Singapore has enacted laws that are fundamentally inimical to the dignity of free men and women, including the passage and enforcement of laws restricting the freedom of speech and brutal corporal punishment for the unauthorized exercise thereof; and

c) In order for Singaporean Government to sustain Singaporean economic viability, Singapore restricts and brutally punishes the exercise of unauthorized speech; and

d) Singaporean Government, intentionally or otherwise, permits or encourages its anti-human dignity policies to become a part of the work culture in its directly or indirectly owned enterprises, including Temasek, STS and STATS.

23) Plaintiff's belief is based in part on the following non-exclusive allegations and online reports which Plaintiff believes to be true:

a) The Government of Singapore strictly controls the dissemination of news relating to the Government of Singapore.

b) In 2007, Singapore ranked 141th out of 167 nations by Reporters Without Borders in the Worldwide Press Freedom Index.

c) Singapore uses the Internal Security Act ("ISA") and the Undesirable Publications Act ("UPA") in order to force those who disagree with the views of the Singaporean oligarchy into silence.

d) Under the ISA, the Government of Singapore may indict, convict, imprison and corporally punish anyone who publishes information that is "prejudicial to the national interest" of Singapore.

e) Singaporean Government believes that it is in its national interest to silence those who disagree with its views.  For example, while hosting a World Bank and International Monetary Fund (IMF) meeting in October 2006, Prime Minister Lee Hsien Loong spoke out against the international media, which he said were trying to impose "their norms and their standards" on the country in relation to freedom of expression. The head of government justified control on the press in comments in July when he said that Asian countries who got "the best financial results were those whose media was less aggressive".

f) Under the UPA, the Government of Singapore may inflict corporeal punishment against those who exercise speech deemed illegal by the Government of Singapore.  The corporeal punishment includes the barbaric practice of "caning". Caning involves hitting a person on a bare buttock with a rattan stick, soaked in

water in order to achieve maximum pain. Caning sessions are held Tuesdays and Fridays at Changi, Singaporean famous top-security prison. Caning is also administered regularly at Queenstown Remand Prison, where the American teenager Michael Fay was caned in May 1994.

g) The World Corporate Punishment Research (www.corpun.com) publishes Singaporean Government's official demonstration of caning thus:



How it happened: A Singapore prison officer demonstrates the caning technique on a dummy lashed to the rack

**Official demonstration of caning of a dummy in Singapore**

h) According to the United States State Department, commercial disputes that may be handled as civil suits in the United States can escalate to criminal cases in Singapore, and result in heavy fines and prison sentences.

i) Reporters Without Borders report in 2007 that the government headed by Lee Hsien Loong, with his father Lee Kuan Yew behind the scenes, has been engaged in a fierce battle with several foreign publications and at the same time has cracked down on Singaporean bloggers and cyber dissidents.

j) Singaporean authorities have tried – and succeeded - into cowering foreign press including, *inter alia*, the Far Eastern Economic Review, the International Herald Tribune, Time and the Financial Times, into submission.

k) Singaporean authorities are particularly sensitive to any criticism of Madam Ho Ching, the president of Temasek, her husband, the Prime Minister of Singapore Lee Hsien Loong and his father, Lee Kuan Yew, their friends and family.

l) Any distribution of truthful reporting that is not perceived as complimentary to STATS, STS, Temasek, Madam Ho Ching, Lee Hsien Loong, Lee Kuan Yew or the Singaporean Government may be met with civil and/or criminal prosecution under Singaporean law, particularly the law relating to defamation, the ISA or the UPA.

m) In a different matter Plaintiff was previously threatened by a Singaporean law firm with civil and criminal prosecution if he published a matter of his opinion in the Untied States.

24) It is not uncommon for the Nation of Singapore to file lawsuits against American businesses and citizens on the legal theory of libel for statements that would

otherwise be permissible under the First Amendment of the United States Constitution and Arizona Constitution. For example, earlier this decade, Singapore filed and settled a libel lawsuit against Bloomberg LP, the popular news dissemination service created by the now current Mayor Bloomberg of New York City. Ultimately, Bloomberg settled that case for nearly a half million dollars and for a public apology published by Bloomberg, on information, on the web. Singapore forced Bloomberg to delete all online copies of its report from the website. See http://www.singapore-window.org/sw02/020830re.htm; http://query.nytimes.com/gst/fullpage.html?res=9907EFDC113CF934A1575BC0A9649C8B63; http://www.singapore-window.org/sw02/020829ny.htm.

25) Plaintiff believes that he has the right under the 1st Amendment to the United States Constitution to express his views and opinions on any matter, and particularly on matters of national and international importance relating to racist and sexist corporate culture of Singaporean businesses.

26) Plaintiff bases his belief on *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974) where the Supreme Court provided absolute immunity from defamation actions for all opinions, stating:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

27) Plaintiff is willing and welcomes an exchange of ideas with Temasek, Madam Ho Ching, Lee Hsien Loong, Lee Kuan Yew and or any other members of the Singaporean oligarchy.

28) Plaintiff also understands that the 1st Amendment to the Constitution of the United States is an empty vessel unless it is vigorously protected by the United States' legislative, judicial and executive branches.

29) Plaintiff's 1st Amendment right is an empty vessel if the following likely events occur:

a) Plaintiff engages in a free exchanged of ideas under the 1st Amendment of the United States; and thereafter

b) The Singaporean oligarchy initiates a defamation action against Plaintiff for the exercise by Plaintiff of protected speech in the United States; and thereafter

c) The Singaporean judiciary – whom Plaintiff believes is the executive branch of the Singaporean Oligarchy – initiates trumped up defamation proceedings, either civil or criminal, against Plaintiff; and thereafter

d) The Singaporean oligarchy attempts to domesticate their trumped up defamation judgment in the United States and/or initiate extradition proceedings against Plaintiff; and thereafter

e) Plaintiff's exercise of his 1st Amendment rights results in economic ruin, imprisonment and caning.

30) Plaintiff comes from a long line of conscientious opposition to dictatorial governments who seek to impose limits on liberty: (i) Plaintiff's father Dr. Aleš Strojnik was imprisoned in Mussolini's Fascist hostage camp[1] at Gonars during WWII for his beliefs; (ii) Plaintiff's uncle Štefan Pogačar was killed by Hitler's Nazi's during WWII for his beliefs; (iii) Plaintiff was persecuted by Tito's Communists during the late 1960's for his religious beliefs; (iv) Plaintiff was detained by Tito's Communists for voicing his opinion; and (iv) Plaintiff's best friend's mother, S. L. was imprisoned in Dachau during WWII for her religious affiliation.

31) Plaintiff is not willing to be cowered into silence by the Singaporean oligarchy, or to compromise his beliefs.  Such beliefs are the foundation of American independence and freedom, and Americans have never compromised their beliefs in the face of tyranny and oppression, *e.g.* England and the Revolution.

32) Plaintiff desires to publish a series of press releases in the United States, European and Asian markets that would disclose the following:

a) The allegations and proceedings in the Sahakian case; and

b) Plaintiff's opinion that Madam Ho Ching and the Singaporean oligarchy, support STATS unfair treatment of Sahakian; and

---

[1] Hostage Camp at Gonars was used by Mussolini to imprison Slovenian population during WWII; if Slovenian freedom fighters harmed an occupying soldier during the occupation, the

c) That Plaintiff continues his investigation into alleged immigration abuses by STATS, STS, Temasek and the Singaporean Government; and

d) Plaintiff's opinion that local agents for STATS, STS, Temasek, Lee Hsien Loong, Lee Kuan Yew, Madam Ho Chin and the Singaporean Government are attempting to cower Plaintiff into silence; and

e) Plaintiff's opinion that all anti human dignity policies of emerging or established right wing dictatorships must be confronted immediately and decisively; and

f) Plaintiff's opinion that American employees, especially women, should exercise caution before permitting themselves to work for STATS, STS, Temasek or any other company associated with the Government of Singapore; and

g) Plaintiff's opinion that Singapore, while pretending to be a democracy, is a *de facto* totalitarian oligarchy; and

h) Plaintiff's opinion that Singaporean oligarchy maintains its power through the imposition of barbaric methods of punishment, including caning; and

i) Plaintiff's opinion that Singaporean judiciary is a *de facto* an executive arm of the Singaporean oligarchy, See, e.g. The Politics of Defamation by Judge Paul Bentley Published in The Provincial Judges' Journal, Canada Autumn 1997; and

j) Plaintiff's other opinions, some of which may or may not be complimentary to the Singaporean oligarchy.

---

Fascists would randomly select prisoners from the Gonars hostage camp and execute them.

33) Plaintiff fears that by the exercise of his 1st Amendment right to free speech, he may be sued or indicted, convicted and sentenced by the Singaporean judiciary *in abstentia*, and that Singapore may seek to domesticate a trumped up civil judgment in the United States or to extradite him to Singapore if he exercises his 1st Amendment Rights in the United States. United States recognizes the extradition treaty with Singapore. *In re Extradition of Vivien Then*, 92 F.3d 851 (9th Cir. 08/07/1996)

34) Plaintiff fears that if Plaintiff publishes the allegations in the Sahakian case, including the allegations of the Second Amended Complaint, or his views and opinions, the Singaporean oligarchy will commence a civil, criminal, ISA or UPA prosecution of Plaintiff.

35) Actual controversy exists between Plaintiff and Defendants relating to Plaintiff's constitutional right of free speech. Plaintiff believes that he has the right to publish the allegations and the proceedings in the Sahakian case and also to express his own, personal opinions regarding the Singaporean oligarchy, its judiciary, its perceived racism and sexism, and any other matter of opinion that Plaintiff chooses. Defendants believe that Plaintiff enjoys no such right.

WHEREFORE, Plaintiff prays for a declaratory judgment that:

A. Plaintiff is constitutionally protected in his anticipated, widely distributed press releases:

    a. Describing and discussing the subjects listed in Paragraph 32 above; and

    b. Describing and discussing the claims in the Sahakian case and in the present case, and the scheduling and the result of any step in the Sahakian case and the present case; and

    c. Describing Plaintiff's continuing investigation into the human rights and free speech abuses by the Singaporean Government and Plaintiff's findings with respect thereto; and

    d. Describing Plaintiff's continuing investigation into the alleged immigration abuses and violations of law by STATS; and

    e. Sounding a warning of danger to American workers concerning the behavior of the Defendants and the Proposed Defendants in the Sahakian case and the danger posed to Americans in general by the Singaporean Government and companies owned, directly or indirectly, by the Singaporean Government; and

    f. Request for information from those with knowledge of the abuses by the Singaporean Government and companies owned, directly or indirectly, by the Singaporean Government, and the publication of findings; and

B. That Plaintiff's publications of the subjects listed in Paragraph 32 above does not violate Ethical Rules governing the conduct of Arizona lawyers, including Plaintiff; and

-16-

C. That in the event of a trumped up defamation judgment by the Singaporean Judiciary in direct response to Plaintiff's exercise of his First Amendment Rights, the American Judiciary cannot and will not permit a domestication of any such judgment; and

D. That in the event of any trumped up judgment of guilt of any Singaporean criminal law arising out of Plaintiff's exercise of his 1st Amendment Rights, Plaintiff shall not be extradited to Singapore.

E. That Plaintiff cannot be extradited to Singapore for the exercise of his constitutionally protected rights.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial for issues triable by a jury.

RESPECTFULLY SUBMITTED this 23rd day of January, 2009.

**PETER STROJNIK, P.C.**

_____
Peter Strojnik
Attorney for the Plaintiff